**Freddie RICHARDSON,
Petitioner-Appellant,**

v.

**Raymond K. PROCUNIER, Director,
Texas Department of Corrections,
Respondent-Appellee.**

No. 84–1749
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

June 10, 1985.

Freddie Richardson, pro se.

Jim Mattox, Atty. Gen., Robert S. Walt, Asst. Atty. Gen., Austin, Tex., for respondent-appellee.

Before WILLIAMS, JOLLY and HILL, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

We decide here that a Texas inmate seeking federal habeas relief has not exhausted his state remedies when, in directly appealing his state criminal conviction, he failed to petition the Texas Court of Criminal Appeals for review of his conviction, notwithstanding that petitions for review of convictions before that court are accepted only on a discretionary basis. Because Richardson failed to do so, we affirm the district court's dismissal of his petition for failure to exhaust state remedies and now require him to pursue state habeas relief, Tex.Code Crim.Proc.Ann. art. 11.07 (Vernon Supp.1985), the appropriate post-conviction procedural route for raising his claim in the state's highest court.

On January 14, 1981 Freddie Richardson was convicted in the 126th District Court of Travis County, Texas, of aggravated robbery. A prior felony conviction was used for sentence enhancement, and he was sentenced to twenty-three years imprisonment. Richardson's conviction was affirmed by the Court of Appeals for the Third Supreme Judicial District of Texas, but he did not petition the Texas Court of Criminal Appeals for its discretionary review of his conviction, the determining point in fact of our decision.

On February 29, 1984, Richardson filed a federal petition for habeas corpus relief alleging that evidence used to convict him was the product of an illegal arrest and that the pretrial identification was unduly suggestive, the same grounds alleged in his appeal to the state court of appeals. On May 22, 1984, a United States magistrate issued a written report, recommending that Richardson's habeas petition claim be dismissed for failure to exhaust state remedies since he did not seek review of his conviction from the Texas Court of Criminal Appeals. The district court undertook a *de novo* review of the entire record, and on July 17, 1984, adopted the report and recommendation of the magistrate. This appeal followed. We affirm the district court's dismissal of the petition.

## I

We begin our review by turning to an examination of the Texas criminal appellate system. In 1980, the Texas State Constitution was amended to create a two-tiered system of appellate review of criminal cases. Tex. Const. art. V, §§ 5, 6; *see also* C. Dally, P. Brockway, *Changes in Appellate Review in Criminal Cases Following the 1980 Constitutional Amendment*, 13 St. Mary's L.J. 211 (1981). The Texas system now provides that except where the death penalty has been assessed, direct appeals in all criminal cases are initially made to the court of appeals. Tex.Code Crim. Proc.Ann. art. 4.03 (Vernon Supp.1985). The decisions of the court of appeals are subject to a second stage of criminal appellate review by the Texas Court of Criminal Appeals. Tex.Code Crim.Proc.Ann. art. 44.24(d) (Vernon Supp.1985). Review by the Court of Criminal Appeals is not a matter of right, Tex.R.Crim.App.P. 302(b), but is within the court's discretion and may be granted either upon the petition of one of the parties or *sua sponte*. Tex.R.Crim. App.P. 302(a). In determining whether to grant review, the Court of Criminal Appeals considers the following six factors:

(1) Where a court of appeals has rendered a decision in conflict with the decision of another court of appeals on the same matter; (2) where a court of appeals has decided an important question of state or federal law which has not been, but should be, settled by the Court of Criminal Appeals; (3) where a court of appeals has decided an important question of state or federal law in conflict with the applicable decisions of the Court of Criminal Appeals or the Supreme Court of the United States; (4) where a court of appeals has declared unconstitutional, or appears to have misconstrued a statute, rule, regulation, or ordinance; (5) where the justices of the court of appeals have disagreed upon a material question of law necessary to its decision; (6) and where a court of appeals has so far departed from the accepted and usual course of judicial proceedings, or so far sanctioned such a departure by a lower court, as to call for an exercise of the Court of Criminal Appeals' power of supervision.

Tex.R.Crim.App.P. 302(c); *see also Ayala v. State*, 633 S.W.2d 526 (Tex.Crim.App. 1982 (en banc)).

## II

██ The Texas statutes must be considered in the light of the firmly established principle that a state prisoner is required to exhaust his state remedies before he applies for federal habeas relief. The exhaustion requirement is satisfied only when federal claims have been fairly presented to the state courts for disposition. *Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971); *Carter v. Estelle*, 677 F.2d 427, 443 (5th Cir.1982). The Supreme Court has rather recently discussed the exhaustion requirement in *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), where it stated: "The exhaustion doctrine is principally designed to protect the state court's role in the enforcement of federal law and prevent disruption of state judicial proceedings." *Id.* at 518, S.Ct. at 1203. The Court further observed:

Because it would be unseemly in our dual system of government for a federal dis-

trict court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation, federal courts apply the doctrine of comity, which teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter. (Citing *Darr v. Burford*, 339 U.S. 200, 204, 70 S.Ct. 587, 590, 94 L.Ed. 761 (1950)).

*Id.*

Although we have not addressed the question of whether it is necessary to seek discretionary review by the Court of Criminal Appeals in order to exhaust state remedies under Texas law, we have discussed this issue with respect to the Florida appellate system. However, because the Texas and Florida statutes governing review are different, these cases do not necessarily control our decision here; nevertheless they serve us with a degree of guidance. First, in *Williams v. Wainwright*, 452 F.2d 775 (5th Cir.1971), we concluded that Williams had exhausted his state remedies only by appealing his conviction to the court of appeals, noting that "[t]he Florida Supreme Court's jurisdiction is strictly described by the Florida Constitution"; we also observed that the Florida courts of appeals were created not as intermediate courts of appeal but as the "end of the road in most cases." 452 F.2d at 776.

Next, however, in *Pressley v. Wainwright*, 493 F.2d 894 (5th Cir.1974), we reached a different conclusion and required review by the Florida Supreme Court. In the context of a factual situation different from *Williams*, we concluded:

> Given the particular factual circumstances leading to the lapse of the filing time through no fault of Pressley, his intention at all times to seek review in the Supreme Court, the belated order of the District Court of Appeal appointing counsel for the purpose of pursuing the appeal, and the good faith assertion of certiorari jurisdiction shown by the possible conflict in the District Court of Appeal's decision, we feel Pressley should again present his contentions to the proper state courts before asserting his claims in federal court.

*Pressley*, 493 F.2d at 895. Thus, the different conclusions of *Pressley* and *Williams* would seem to suggest that although it is not necessary to seek discretionary review from a second appellate level when review will almost certainly be denied, a petitioner is not considered to have exhausted his state remedies where additional appellate review would possibly be granted.

### III

As we have noted earlier, the Florida cases do not control our decision here because Texas and Florida statutes are dissimilar.[1] In *Williams* and *Pressley*, we interpreted the discretion of review exercised by the Florida Supreme Court as very limited. In contrast, the Texas Court of Criminal Appeals exercises broad discretion in accepting appeals for review. If, for instance, there is a perceived conflict among the several courts of appeals in Texas, or if the Court of Criminal Appeals wishes to settle some particular point of law, or if the court of appeal has misconstrued a statute or ordinance, or if the court of appeal has departed from the usual course of adjudication, the Court of Criminal Appeals may exercise its discretion and accept review. Indeed, it appears to us that as a practical matter, the statute places few restrictions on the court's discretion to accept review.

We are persuaded that the exhaustion doctrine requires that the Texas Court of Criminal Appeals be given an opportunity to review and rule upon the petitioner's claim before he resorts to the federal courts. Our holding is dictated by several considerations. First, even though the

---

1. The jurisdiction of the Florida Supreme Court has been modified by an amendment to the Florida Constitution since our decisions in *Williams* and *Pressley*, and now more clearly conforms to the Texas statutes. *See* Florida Rule of Appellate Procedure 9.030.

court's review is discretionary, its discretion is broad; thus, we are clearly persuaded from evaluating the petition for review as a futile act. Indeed, we could hardly ever say with certainty whether the Texas Court of Criminal Appeals would accept review in a given case. Even if we engaged in an effort to make such a determination, it would often be no more than an attempt at reading the subjective mind of that court. Such a presumption on our part would surely be "unseemly" and would constitute an unnecessary interference with a state's criminal justice system. Furthermore, to review the status of the law in each of the Texas courts of appeal, searching for a conflict, or otherwise to survey Texas law to see whether the given case may possibly fall within the general criteria pursuant to which the Court of Criminal Appeals exercises its discretion, would impose an unnecessary and heavy burden on the federal courts.

■ Without hesitation, therefore, we hold that a Texas inmate seeking federal habeas relief who, in directly appealing his state criminal conviction, has by-passed the Texas Court of Criminal Appeals will not be deemed to have exhausted his state remedies until he has raised his claims before the state's highest court through collateral review provided by state habeas procedures.[2] *See Carter v. Estelle,* 677 F.2d 427, 442 n. 10 (5th Cir.1982), *cert. denied,* 460 U.S. 1056, 103 S.Ct. 1508, 75 L.Ed.2d 937 (1983); *but cf. Harris v. Beto,* 280 F.Supp. 200 (N.D.Tex.1967) (because of availability of fact-finding procedures in lower courts, as required by post-conviction procedures available under article 11.07, habeas corpus filed originally in Texas Court of Criminal Appeals is not exhaustive of post-conviction remedies). Accordingly, the district court's dismissal of the

instant petition for failure to exhaust state remedies is

AFFIRMED.

---

2. In so holding, we do not foreclose other avenues by which state remedies may be exhausted. A petitioner might request out-of-time discretionary review by the Court of Criminal Appeals or he might move the Court of Appeals to withdraw and then reenter its mandate, thereby enabling an in-time petition for discretionary review with the Court of Criminal Appeals. *See Pressley v. Wainwright,* 493 F.2d 894, 895–96

(5th Cir.1974) (neither alternative is specifically excluded by Texas statutes or rules of court). *But see Carter v. Estelle,* 677 F.2d 427, 443 (5th Cir.1982) ("the use of extraordinary writs or other abnormal or seldom-used avenues of relief is generally not considered a proper method of exhaustion when normal methods are available"), *cert. denied,* 460 U.S. 1056, 103 S.Ct. 1508, 75 L.Ed.2d 937 (1983).