**Jimmy MACK, Petitioner,**

v.

**James A. LYNAUGH, Director, Texas Department of Corrections, Respondent.**

**Civ. A. No. SA–88–CA–0339.**

United States District Court,
W.D. Texas,
San Antonio Division.

Dec. 27, 1990.

Mark Stevens, San Antonio, Tex., for plaintiff.

Jimmy Mack, Huntsville, Tex., pro se.

David B. Fannin, Ledbetter & Benjamin, Austin, Tex., for defendants.

## ORDER

PRADO, District Judge.

On this date came on to be considered the status of the above-styled and numbered cause. The Petitioner in this case, Jimmy Mack, is in Respondent's custody pursuant to a judgment and sentence that was entered in the 289th District Court of Bexar County, Texas and styled the *State of Texas v. Jimmy Mack*, Cause No. 85–CR–1922–A. The case comes before the Court today on objections filed on March 10, 1989 by Petitioner to the Memorandum and Recommendation of United States Magistrate John W. Primomo, filed on February 22, 1989. The Magistrate recommended that Petitioner's Application for Writ of Habeas Corpus be dismissed without prejudice for failure to exhaust state remedies.

### Standard of Review

When no party has objected to a magistrate's findings and recommendation, the court need not conduct a de novo review of them. *See* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings and recommendations to which objection is made."). In such cases, the court need only review the findings and recommendation and determine whether they are either clearly erroneous or contrary to law. *United States v. Wilson,* 864 F.2d 1219, 1221 (5th Cir.1989). On the other hand, any finding or recommendation that is objected to requires de novo review.

The Court has conducted a de novo review of the record and file of this cause and, after careful consideration, finds that it must reject the Magistrate's Recommendation that Petitioner's application for writ of habeas corpus be dismissed for the failure to exhaust state remedies. The Court has also reviewed the record and file of this cause with respect to the merits of Petitioner's application and finds that the Petitioner has failed to prove the elements necessary to obtain habeas relief on his claim that he was denied effective assistance of counsel at trial. The Court therefore denies his application for writ of habeas corpus.

### Facts

The Petitioner, Jimmy Mack, alleges that he was denied the effective assistance of counsel during his trial in state court for aggravated robbery. The facts surrounding this robbery are briefly summarized below.

On May 7, 1985, Petitioner, and a man by the name of Ray Phil Thomas, went to the Broadway Upholstery and Furniture Refinisher shop located at 2018 Broadway in San Antonio, Texas. While they were there, Thomas produced a gun and the two men proceeded to rob the employees and owner of the shop. St. of F. 189–190, 192, 194.

During the course of the robbery Thomas shot Mariano Salinas in the neck. After the shooting Mack and Thomas ran out the

door and fled. While they were running away one of the employees of the shop, Juan Cavazos, fired a shotgun at them and injured Mack. St. of F. 194–195.

Mack and Thomas drove away in Mack's car. When they got to the intersection at New Braunfels and Commerce, Thomas departed the vehicle and Mack drove to the house of a friend who summoned the EMS. Mack was briefly hospitalized and then arrested the same day for aggravated robbery. St. of F. 244–247 and Tr. 5.

Petitioner asserts that he was an unwilling participant in the robbery. According to Mack, he was approached by Thomas on the afternoon of May 7, 1985. Thomas indicated that he wanted to buy some marijuana and that he would pay for gas and some beer if Mack would drive him to the place where the deal was to be transacted. Mack agreed and Thomas directed Mack to the upholstery shop with the aid of a hand-drawn map. St. of F. 233–235.

The two men entered the shop and Mack began to question Armondo Castillo, the owner of the shop, about purchasing some vinyl to upholster the seats in his car. When Castillo turned around to obtain some fabric samples, Thomas pulled a gun, stuck it in Castillo's back and ordered him into the office. St. of F. 236–237. Mack gathered the other employees together and took them into the office where the robbery and shooting occurred. St. of F. 196, 239–240.

Mack testified that he did not know Thomas was carrying a gun when he drove him to the shop. He testified that he was stunned and frightened when Thomas pulled the gun on Castillo, and asserted that he cooperated with Thomas in the robbery because he was afraid that he or someone else might get shot. St. of F. 235, 238–241.

### Procedural History

Petitioner was indicted on June 27, 1985 and charged with aggravated robbery with a deadly weapon. Tr. 8–9. He pled not guilty and his case was tried to a jury. He was represented at trial by court appointed counsel, Bernard Boudreau. The jury found Mack guilty as charged and he was sentenced by the court to 20 years imprisonment in the Texas Department of Corrections. Tr. 10–11, 53, 56–57.

Two motions for a new trial were filed on behalf of Mack. Both were denied. Tr. 54–55, 60–61 and 71. Mack's conviction was affirmed by the Fourth District Court of Appeals in an unpublished opinion delivered on July 8, 1987. *Mack v. State*, No. 4–86–00025–CR. On August 17, 1987, Mack filed a petition for discretionary review with the Texas Court of Criminal Appeals. That court denied Mack's request for review, without opinion, on October 14, 1987.

On April 28, 1988, Mack filed his petition for writ of habeas corpus with this Court. The case was referred to the Magistrate, who recommended that Mack's petition be dismissed without prejudice so that he could exhaust his state court remedies. Magistrate's Memorandum and Recommendation filed on February 22, 1989. As discussed below, the Court disagrees that Mack failed to exhaust his state remedies and therefore rejects the Magistrate's Recommendation concerning this issue.

### Exhaustion of State Remedies

█ The exhaustion doctrine has been well established for more than a century. It is not jurisdictional but derives from principles of comity. *Vela v. Estelle*, 708 F.2d 954, 958 (5th Cir.1983), *reh. denied* 715 F.2d 577, *cert. denied* 464 U.S. 1053, 104 S.Ct. 736, 79 L.Ed.2d 195 (1984).

█ The doctrine provides that before seeking relief in the federal courts, a habeas petitioner must first exhaust all remedies available to him in state court. 28 U.S.C. § 2254(b). To have exhausted his state remedies, a habeas petitioner must have fairly presented the substance of his claim to the state courts. *Vela*, 708 F.2d at 958. Once a federal claim has been "fairly presented" to the state courts, the exhaustion requirement is satisfied. *Castille v. Peoples*, 489 U.S. 346, 109 S.Ct. 1056, 1060, 103 L.Ed.2d 380 (1989).

■ The exhaustion doctrine requires that the Texas Court of Criminal Appeals be given an opportunity to review and rule on a petitioner's claim before he resorts to the federal courts. *Richardson v. Procunier*, 762 F.2d 429, 431 (5th Cir.1985). Further, the exhaustion requirement is normally not satisfied if a petitioner presents new legal theories or entirely new factual claims in his petition to the federal court. *Vela*, 708 F.2d at 958.

■ In seeking relief from his conviction in the various courts, Mack has asserted one theory; that he was denied the effective assistance of counsel, in violation of the Sixth and Fourteenth Amendments of the United States Constitution.[1] It is not disputed that Mack urged the same grounds in support of his claim in the Fourth Court of Appeals as he does in his petition for writ of habeas corpus with this Court.[2]

Respondent argues, however, that because Mack did not specify each of these grounds in his petition for discretionary review, he failed to "fairly present" his claims to the state's highest court and, therefore, failed to exhaust his state remedies. Respondent's Response filed March 24, 1989 at 3.

Mack concedes that, in his petition for discretionary review, he did not set forth each of the alleged instances of deficient representation that he had urged to the court of appeals but complained generally that "various aspects of counsel's representation" considered alone or together constituted grounds for relief. He requested

reversal of his conviction based on the "totality of circumstances." He also specifically discussed what he considered the most glaring deficiency in trial counsel's representation, the abandonment of the defense of duress. Appellant's Petition for Discretionary Review, No. 885-87, filed August 17, 1987.

The Court disagrees with the Respondent that Petitioner failed to exhaust his state remedies by not specifying each of the grounds that supported his claim in his petition for discretionary review. As stated above, in the petition for discretionary review the Petitioner argued that "the court of appeals erred in holding that trial counsel rendered reasonably effective assistance." The question he presented to the Court of Criminal Appeals was "whether, considering the totality of circumstances, appellant received reasonably effective assistance of counsel guaranteed him by the Sixth and Fourteenth Amendments to the United States Constitution ..." Appellant's Petition for Discretionary Review, No. 885-87, filed August 17, 1987.

Although there are no cases directly on point, the Court finds that the decision and rationale in *Vela v. Estelle* is persuasive on the exhaustion issue. In *Vela* the petitioner filed an application for habeas relief in the state appellate court asserting that he was denied the effective assistance of counsel at his sentencing proceeding. That court denied relief. The Texas Court of Criminal Appeals also denied Vela's application for habeas relief, without written order. *Id.* at 957.

---

1. In his brief to the court of appeals and his petition for discretionary review to the court of criminal appeals, Petitioner asserted that he had been denied effective assistance of counsel under both the Texas and the United States Constitutions. As set forth in the court of appeals opinion, however, the Texas Court of Criminal Appeals adopted the *Strickland* standard for evaluating ineffective assistance of counsel claims made under the Texas Constitution. *Butler v. State*, 716 S.W.2d 48, 57 (Tex.Crim.App. 1986). Further, the Court of Criminal Appeals held in a subsequent case that the Texas constitutional and statutory provisions do not create a standard for effective assistance of counsel that is more protective of an accused's rights than the standard established by the United States

Supreme Court in *Strickland.* *Hernandez v. State*, 726 S.W.2d 53, 56-57 (Tex.Crim.App. 1986). This Court's analysis focuses on Petitioner's claims under the United States Constitution.

2. Mack argued one additional ground in the Court of Appeals that he has not raised with this Court; the failure of his trial attorney to object to the admission of evidence of extraneous offenses. Because Mack has not raised that ground in this proceeding, the Court assumes he has abandoned it, and it will not be addressed. The Court also notes that there is no evidence in the record of any extraneous offense being introduced at Petitioner's trial.

Vela then filed a habeas petition in federal court. The district court denied relief and Vela appealed. On appeal the State argued that Vela's supplemental brief contained claims that the state habeas court never had the opportunity to consider. *Id.* The Court rejected the State's argument noting:

> [T]here is no dispute that the alleged sixth amendment violation and its underlying legal theories were presented to ... [the] state habeas court ... The only dispute here is over those instances of alleged substandard conduct cited in this appeal which were not explicitly enumerated in Vela's state habeas petition.

*Id.* at 958.

The Court observed that even though Vela set forth a number of trial errors in his brief to the Fifth Circuit that were not specifically mentioned in his state habeas petition, "all of these errors support the same constitutional claim urged before the state court, and all were readily discernible from the review of the entire record which that court was obligated to carry out." *Id.* at 960. With respect to review by the Texas Court of Criminal Appeals the Court noted that "[t]he transcript and all the documents in this case were transmitted to the Texas Court of Criminal Appeals, which denied the application without written order. We must presume that its consideration of the record, and all the facts contained therein, was no less thorough than that of the state habeas court." *Id.* at 959. Because the Court was unwilling to find "that the state habeas court failed in its duty to evaluate counsel's performance on the basis of the record as a whole," it held that Vela had exhausted his state remedies as required by 28 U.S.C. § 2254. *Id.*

Similarly in this case, the entire record was sent to the Court of Criminal Appeals, as required by the Texas Rules of Appellate Procedure. Tex.R.App.Proc. 202(f).

Thus, the Court of Criminal Appeals had both the court of appeals opinion and the record from the trial proceeding before it when it made its decision to deny Petitioner's request for review.

This Court is also unwilling to find that the Texas Court of Criminal Appeals failed to review the entire record that was before it in declining to exercise its discretion to review Petitioner's case. The Petitioner has not alleged any new theories, nor has he presented any new evidence to this Court that was not presented to the state courts. The Court finds that Petitioner sufficiently exhausted his state remedies and now proceeds to consideration of the merits of his petition.[3]

### *Ineffective Assistance of Counsel*

#### 1. *Introduction.*

The Petitioner's application for writ of habeas corpus alleges that his trial counsel was ineffective in the following ways: (1) abandonment of the defense of duress, (2) failure to object to the jury charge concerning the law of parties, (3) failure to file a pretrial motion to suppress evidence seized from Petitioner's car, (4) failure to elicit reputation testimony, (5) failure to object to prosecutorial misconduct, and (6) failure to argue in mitigation of punishment.

#### 2. *Strickland Test.*

■ "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674 (1984). The test for determining a claim of ineffective assistance of counsel has two components. First, the defendant must show that coun-

---

**3.** The case of *Richardson v. Procunier,* 762 F.2d 429 (5th Cir.1985) is distinguishable because in that case the petitioner failed to file a petition for discretionary review with the Texas Court of Criminal Appeals. Under those circumstances the court held that petitioner had failed to exhaust his state remedies. *Id.* at 430. Likewise, *Castille v. Peoples,* 489 U.S. 346, 109 S.Ct. 1056, 103 L.Ed.2d 380 (1989) is not applicable because in that case the Court found "no fair presentation" based on the fact that the petitioner's claim was presented in state court "for the first and only time in a procedural context" in which the merits of the claim would not be considered except under compelling circumstances. *Id.* 109 S.Ct. at 1060.

sel made errors so serious that he was not functioning as the "counsel" guaranteed by the Sixth Amendment.

Second, the defendant must prove that the deficient performance so prejudiced the defense that he was deprived of a fair trial. *Id.* at 687, 104 S.Ct. at 2064; *Buxton v. Lynaugh,* 879 F.2d 140, 142 (5th Cir.1989). This requires showing that "there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068 (citations omitted); *Buxton,* 879 F.2d at 142; *Earvin v. Lynaugh,* 860 F.2d 623, 625–27 (5th Cir.1988). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068.

■ Under *Strickland* the reviewing court is permitted to look at either prong of the test first. If either component is found dispositive, it is not necessary to address the other. *Strickland,* 466 U.S. at 697, 104 S.Ct. at 2069; *Buxton,* 879 F.2d at 142. *See also Murray v. Maggio,* 736 F.2d 279, 282 (5th Cir.1984). "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed." *Strickland,* 466 U.S. at 697, 104 S.Ct. at 2069.

3. *Abandonment of Defense of Duress.*

■ Petitioner alleges that his trial attorney erred by abandoning Petitioner's only viable defense, the defense of duress. See Petitioner's Response and Motion for Evidentiary Hearing filed October 17, 1988 at 2–5. The record reflects that the trial judge offered to include standard instructions on the defense of duress in the jury charge, but defense counsel requested it be left out stating, "[h]e doesn't need the duress charge." St. of F. 278–279.

The court of appeals held that by refusing the trial court's offer to charge the jury on the defense of duress Petitioner's counsel committed "an unprofessional error." *See Mack v. Texas,* No. 4–86–00025–CR (Tex.App.—San Antonio July 8, 1987) at 7. This Court agrees that it was error for trial counsel to fail to have the jury charged on the defense of duress. However, the evidence presented in the case on this issue was conflicting and the Court cannot say that there is a reasonable probability that but for this error the outcome of the trial would have been different.

■ For example, the four witnesses to the robbery all testified that Petitioner and Thomas acted together in committing the robbery and that Petitioner did not appear to be nervous. St. of F. 159, 164–165, 173–177, 185–187, 190–194, 196, 201–202. These witnesses also all testified that there was no mention of marijuana during the course of the robbery, thereby casting doubt on the Petitioner's testimony and his story that he had gone with Thomas to the upholstery shop to purchase marijuana. St. of F. 186, 201. Mr. Castillo testified that when Thomas put the gun to his back it was Petitioner who told him to go to the office. He also testified that Petitioner then proceeded to tell the other people to go to the office. St. of F. 196.

There was also a significant discrepancy in the testimony concerning the time Petitioner and Thomas left the car wash together on the day of the robbery. Mr. Washington, a defense witness, testified that Petitioner and Thomas left the car wash together at about 12:30 p.m. St. of F. 225. The robbery did not occur until 5:00 p.m. St. of F. 139. Petitioner first asserted that he and Thomas left the car wash at around 1:00 p.m. St. of F. 233–234. Later he changed his testimony stating, in response to cross examination, that they didn't leave the car wash until 4:15 or 4:30 p.m. St. of F. 248. The jury had sufficient evidence before it, therefore, to conclude that Petitioner was not under duress at the time of the robbery.

In summary, the Court does not find that the evidence presented concerning the defense of duress was so strong or compelling that but for the failure to charge the jury on the defense of duress there is a reasonable probability that the outcome of the case would have been different.

**4.** *Incorrect Charge on Law of Parties.*

The second ground urged by Petitioner is that his lawyer failed to object to the jury charge concerning the law of parties.[4] Petitioner's Response and Motion for Evidentiary Hearing filed October 17, 1988 at 5–6. The error in the charge was that the trial court failed to apply the law of the parties (which was correctly set out in the charge) to the facts of the case, as is required under Texas law. *Romo v. State,* 568 S.W.2d 298, 299 (Tex.Crim.App.1977). Texas law also provides, however, that absent an objection, the failure of the trial court to apply the law of parties to the facts of the case is not fundamental error. *Id.* at 302. The question is whether the failure of Petitioner's counsel to object to the erroneous charge, which resulted in a waiver of the right to challenge the charge on direct appeal, meets the *Strickland* test for ineffective assistance of counsel.

In *Romo* the Court of Criminal Appeals pointed out that a jury charge on the law of parties enlarges a defendant's criminal responsibility, thus benefitting the State and not the defendant. *Romo,* 568 S.W.2d at 302. Accordingly, when the trial court fails to apply the law of parties to the facts of the case it is a recognized trial strategy decision for defense counsel not to ask for such a charge. *Id.*

Under *Strickland,* there is a strong presumption that counsel's conduct falls within the wide range of reasonable, professional assistance. The defendant has the burden to overcome the presumption "that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065. In the present case the Court finds that the decision of trial counsel not to object to the charge on law of the par-

ties fell within the wide range of reasonable professional assistance and, therefore, does not support Petitioner's claim of ineffective assistance of counsel.

**5.** *Failure to File Pretrial Motion to Suppress.*

The next ground urged by Petitioner is that his lawyer failed to file a pretrial motion to suppress a map that was seized from Petitioner's car. Petitioner asserts that "had counsel filed a Motion for Discovery he may have found the map was seized illegally and been able to get it suppressed." Petitioner's Response and Motion for Evidentiary Hearing filed October 17, 1988 at 6.

The Court of Appeals found that there was no basis in the record for filing a motion to suppress this evidence. *See Mack v. Texas,* No. 4–86–00025–CR (Tex. App.—San Antonio July 8, 1987) at 8. This Court agrees. Absent a showing that there was a legal basis for filing a motion to suppress, this argument fails to meet either prong of the *Strickland* test and the Court rejects it summarily.

**6.** *Failure to Elicit Reputation Testimony.*

Next, Petitioner alleges that trial counsel was ineffective in failing to elicit beneficial reputation testimony from three witnesses, Annet Brewer, Mary Hill and Shelton Washington. Petitioner asserts that trial counsel's inability to elicit such testimony indicated that he "lacked a firm command of the law and consequently failed to render reasonably effective assistance." Petitioner's Response and Motion for Evidentiary Hearing filed October 17, 1988 at 6.

---

**4.** The charge submitted to the jury in this case was as follows:

Our law provides a person is criminally responsible as a party to an offense if the offense is committed by his own conduct, or by the conduct of another for which he is criminally responsible, or by both. Each party to an offense may be charged with commission of the offense.

Mere presence alone will not make a person a party to an offense. A person is criminally

responsible for an offense committed by the conduct of another if acting with intent to promote or assist the commission of the offense he solicits, encourages, directs, aids or attempts to aid the other person to commit the offense.

Tr. 46. The Court notes that the language contained in this portion of the charge is found in Tex.Penal Code Ann. §§ 7.01(a)(b) and 7.02(a)(2) (Vernon 1974).

█ The Court notes first that trial counsel attempted to elicit testimony both about Petitioner's reputation for truthfulness and his reputation for peacefulness. A defendant is allowed to put on character evidence concerning his reputation as a peaceful, law abiding citizen. *Hicks v. State*, 493 S.W.2d 833, 835 (Tex.Crim.App. 1973). On the other hand, unless the defendant's character for truthfulness is at issue, either because truthfulness is a pertinent trait related to the crime charged or because the State has attempted to impeach the defendant or otherwise put his character for truthfulness at issue, evidence of defendant's reputation for truth and veracity is not admissible. *Logan v. State*, 455 S.W.2d 267, 269 (Tex.Crim.App. 1970); *Spector v. State*, 746 S.W.2d 946, 950 (Tex.App.—Austin, 1988 review ref'd).

The court of appeals did not distinguish between the two types of reputation testimony sought to be introduced and found that the proffered testimony was not admissible because Petitioner's "character for truthfulness had not been attacked and it was therefore not in issue." *See Mack v. Texas*, No. 4-86-00025-CR (Tex.App.—San Antonio July 8, 1987) at 12. Accordingly, the court of appeals found that the failure of trial counsel to elicit this testimony was not error. *Id.*

Having reviewed the trial record, the Court notes that some "reputation" testimony was in fact obtained from the witnesses at issue. Annet Brewer testified that she knew Petitioner's reputation in the community and that, "he is a pretty nice fellow." St. of F. 211. She also testified that for as long as she knew Petitioner he had not been arrested for anything, that he had a reputation for being "a very peaceful person," and that he had never been violent toward her or anyone else. The prosecutor objected to some of defense counsel's questions eliciting this testimony, but his objections were registered after the witness had

already answered. The court sustained the objections, but did not instruct the jury to disregard the testimony. Thus, the testimony of Ms. Brewer was, in fact, before the jury. St. of F. 216–218.

█ Defense counsel also asked Ms. Brewer, "Do you know the Defendant Jimmy Mack's reputation for truth and veracity in the community?" The prosecutor objected and the court sustained the objection stating, "You cannot ask that question yet at this point in the trial ..." St. of F. 217.[5]

█ Mary Hill testified without objection that she had known Petitioner for two years and that during that time she had never known him to get into any trouble and that he had never been bad or violent toward her. St. of F. 222. Trial counsel then asked her, "Would you characterize him as a peaceful type?" The prosecutor objected and the objection was sustained. Defense counsel did not pursue the testimony further, thus, this portion of her testimony was not obtained. St. of F. 222.

The only question asked of Mr. Washington that related to Petitioner's reputation was whether Petitioner smoked marijuana or did any other drugs. Mr. Washington testified without objection that he did not. St. of F. 228. No other reputation questions were asked of Mr. Washington.

Therefore, the record reveals that the only testimony actually excluded was the testimony of Ms. Brewer concerning Petitioner's reputation for truth and veracity and the testimony of Ms. Hill concerning Petitioner's reputation for peacefulness. For purposes of its analysis, the Court assumes that this testimony would have been favorable to Petitioner, and that the failure of trial counsel to elicit this testimony was error.

Despite this assumption, however, this Court cannot conclude that there is a reasonable probability that but for the failure to present this testimony the outcome of

---

5. This ruling by the trial court appears to be what the court of appeals was referring to when it concluded that the proffered testimony was not admissible because Petitioner's character for truthfulness had not been attacked and therefore was not at issue. The Court does not

disagree with this holding since the crime with which Petitioner was charged, aggravated robbery, is considered a form of assault and not an aggravated type of theft. *Hightower v. State*, 629 S.W.2d 920, 922–923 (Tex.Crim.App.1981).

**1126**

the case would have been different. As described above, most of the testimony sought by defense counsel concerning Petitioner's reputation was in fact elicited before the jury. The testimony was favorable to Petitioner and no contradictory testimony or other evidence was presented by the State. Further, the evidence linking Petitioner to the crime was direct and undisputed. Under these circumstances, the Court cannot find that the failure to elicit additional testimony from Ms. Brewer and Ms. Hill concerning Petitioner's reputation for peacefulness, truth and veracity had a significant impact on the outcome of the case. In other words, the Court finds that Petitioner has failed to prove the requisite prejudice under *Strickland* concerning the failure of trial counsel to elicit reputation testimony and this argument is rejected.

### 7. *Failure to Object to Prosecutorial Misconduct.*

██ Petitioner also argues that his trial counsel erred by failing to object to improper jury argument by the State prosecutor. The specific language that Petitioner finds objectionable is as follows:

> He said he has a clean record and all of that. That may be. We have to take his word for that so far, but the punishment is not up to you. If he has a clean record, that will show up at the punishment phase. You are not involved in that. He will go to the judge for the punishment. Whether or not he has a clean record, like he says he does, that has nothing to do with determining whether or not he is guilty.

Petitioner's Response and Motion for Evidentiary Hearing filed October 17, 1988 at 7. The Petitioner asserts that this argument was objectionable because it implied that Petitioner did not have a clean record and invited the jury "to speculate on matters not in evidence." Petitioner's Response and Motion for Evidentiary Hearing filed October 17, 1988 at 7.

The court of appeals addressed this argument and stated:

> We find no implication from the argument that appellant's claim of a clean

record was possibly false ... Nor can we conclude that the argument constituted an impermissible attempt to invite the jury to speculate on matters not in evidence ... The argument of the prosecutor was ... in all respects proper.

*See Mack v. Texas,* No. 4–86–00025–CR (Tex.App.—San Antonio July 8, 1987) at 13. The court also noted that this argument was in response to the following argument of Petitioner's attorney:

> [T]his is a very important decision that you folks have to make. This guy's record is unblemished. He never has been in trouble before. I will ask you to take that into consideration. The man is not a career criminal.

*Id.* at 14.

"In order to be appropriate, jury argument must fall within the categories of (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; or (4) a plea for law enforcement." *Hightower v. State,* 629 S.W.2d 920, 926 (Tex.Crim.App.1981).

This Court agrees with the court of appeals that the argument was proper. The gist of the prosecutor's argument was not that Petitioner lied about having a clean record, but that such a record, if true, was not relevant on the issue of guilt or innocence but should be considered only in deciding punishment. The argument was a proper answer to the argument of opposing counsel, and Petitioner's attorney did not err by failing to object to it.

### 8. *Failure to Argue in Mitigation of Punishment.*

██ Finally, Petitioner argues that his attorney erred by failing "to present mitigation evidence at [the] punishment phase of trial." Petitioner asserts that not only did his attorney "abandon his role as an advocate, but he went further and assumed a prosecutorial stance." Petitioner's Response and Motion for Evidentiary Hearing filed October 17, 1988 at 7. This rebuke stems from the following statement made by his attorney at the sentencing hearing:

> I am sure the Court has read the presentence investigation. There is nothing I

can really add to that. It has been reiterated that he has no prior record and does have two dependents. I hate to see a guy throw his life away, not to mention somebody else's possible life.

St. of F. 308–309.

Petitioner asserts that the last phrase of this statement "presumably" referred to the complainant, who was shot by Thomas during the robbery. He argues that by making this statement his attorney "assumed a prosecutorial stance ... which was prejudicial to petitioner." Petitioner's Response and Motion for Evidentiary Hearing filed October 17, 1988 at 7.

This argument is without merit. First, as noted by the court of appeals, it is not at all clear that the Petitioner's attorney was referring to the complainant in his statement. It is more likely that he was referring to Petitioner's dependents. *See Mack v. Texas*, No. 4–86–00025–CR (Tex.App.—San Antonio July 8, 1987) at 14.

More importantly, however, this Court finds that regardless of this statement, there is not a reasonable probability that but for the conduct of his attorney during the sentencing proceeding the outcome of Petitioner's case would have been different. The Court notes that Petitioner was sentenced by the same judge who presided over his trial. A presentencing report was prepared and reviewed by the judge. The judge heard all of the mitigating evidence, including the Petitioner's lack of a criminal record, his prior military service, the injury he received during the course of the robbery and his regret over his involvement in the crime. In addition, Petitioner testified at his sentencing hearing.

As noted by the court of appeals, "Brief as it may have been, counsel presented some evidence and argument in behalf of appellant during the punishment phase." *See Mack v. Texas*, No. 4–86–00025–CR (Tex.App.—San Antonio July 8, 1987) at 15. Under these circumstances, the Court finds that Petitioner has failed to meet either prong of the *Strickland* test and his claim must therefore fail.

### 9. *Conclusion.*

In conclusion, the Court finds that Petitioner has failed to meet the burden required for obtaining habeas relief on his claim for ineffective assistance of counsel. There was no showing that the justice of his conviction was rendered unreliable by a breakdown in the adversary process caused by deficiencies in counsel's assistance. The proceeding was not fundamentally unfair. Accordingly, Petitioner's application for writ of habeas corpus is denied.

SIGNED and ENTERED.